IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| MARGARITA MOLINA,<br>　　Plaintiff,<br><br>v.<br><br>ANDREW SAUL, COMMISSIONER OF<br>SOCIAL SECURITY,<br>　　Defendant. | §<br>§<br>§<br>§ No. EP-19-CV-00381-ATB<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff Margarita Molina ("Molina") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Court orders that the Commissioner's decision be **AFFIRMED**.

## I.　PROCEDURAL HISTORY

On August 2, 2016, Molina filed an application for SSI, alleging a disability date of August 2, 2016. (R. 176). Molina's application was denied initially on December 6, 2016, and upon reconsideration on April 21, 2017. (R. 176). An Administrative Law Judge ("ALJ") held a hearing on April 13, 2018. (R. 195-226). The ALJ issued a decision ("Decision") on December 17, 2018, finding that Molina was not disabled. (R. 170-88). On November 27, 2019, the Appeals Council denied Molina's request for review of the ALJ's Decision. (R. 1-9).

## II. ISSUE

Molina presents the following issue for review: whether "[t]he ALJ erred in disregarding Molina's chronic knee pain, difficulty walking and difficulty going up stairs." (ECF No. 20, p. 2).

## III. DISCUSSION

### a. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). "Substantial evidence 'is more than a mere scintilla, and less than a preponderance.'" *Masterson*, 309 F.3d at 272 (citation omitted). The Commissioner's findings will be upheld if supported by substantial evidence. *Id.* A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (internal quotation marks omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.* (internal quotation marks omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

b. **Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 416.920(a)(4). Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical Vocational Guidelines of the regulations, by vocational expert ("VE") testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut the finding that there are jobs that exist in significant numbers that the claimant could perform. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

In the present case, the ALJ found that Molina "ha[d] not engaged in substantial gainful activity since August 2, 2016, the application date."[1] (R. 178). At step two, the ALJ found that Molina:

> had the following severe impairments: diabetes mellitus with neuropathy; left breast malignant tumor status-post removal; right knee osteoarthritis with internal derangement, status-post right knee partial medial meniscectomy; headaches; obstructive sleep apnea; left and right hand trigger fingers, status-post release left middle finger and release right middle finger; cataracts; chronic kidney disease stage I; hypertension; and obesity.

---

[1] At the hearing, the ALJ granted Molina's motion "to amend that alleged onset date from April 1, 2013[,] to the protective filing date of August 2, 2016." (R. 176).

3

(R. 178). Further, the ALJ found that "[t]he above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." (R. 178). The ALJ also found that Molina's "medically determinable mental impairment of depression [did] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (R. 179). At step three, the ALJ found that Molina did not have an impairment or combination of impairments that met or equaled the severity of any listed impairment. (R. 180).

> Before proceeding to step four, the ALJ found that Molina:
>
> has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and walk about 2 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday. The claimant can sit for 1 hour, then stand for 1-3 minutes without leaving her workstation, then continue to alternate accordingly between the two positions throughout the 8-hour workday. The claimant requires a cane to ambulate. The claimant can occasionally climb ramps and stairs with banisters and never climb ladders, ropes, or scaffolds. The claimant can occasionally overhead reach with bilateral upper extremities and frequent [sic] handle, feel, and finger with bilateral upper extremities. The claimant cannot work at unprotected heights or around dangerous moving machinery.
>
> The claimant can occasionally operate foot controls and cannot be required to operate a motor vehicle in order to perform her work. The claimant cannot have more than occasional exposure to direct sunlight; bright/flashing lights; industrial strength chemical fumes; or industrial level noise. The claimant is able to avoid ordinary workplace hazards. She can see ordinary book print and newspaper size font. The claimant cannot have more than occasional concentrated exposure to fumes, odors, dusts, gases, poor ventilation, humidity, extreme hot and cold temperatures.

(R. 181-82). At step four, the ALJ found that Molina was "capable of performing past relevant work as a receptionist" because the work did "not require the performance of work-related activities precluded by [Molina's] residual functional capacity." (R. 187). Accordingly, the ALJ found that Molina was not disabled within the meaning of the Social Security Act and did not

proceed to step five. (R. 188); *see* 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").

### c.     Analysis

Molina argues that "[b]y disregarding [her] chronic knee pain and the difficulty walking and going up stairs, the ALJ failed to fully consider the objective medical evidence and assess her disability per SSA regulations." (ECF No. 20, p. 2).

To support this contention, Molina first contends that "the ALJ disregard[ed] the . . . conclusion of Dr. Thomas Alost that the Plaintiff was disabled as 'conclusory' and not supported by the evidence." (*Id.*). Molina argues that in rejecting Dr. Alost's conclusion, the ALJ failed to conduct the required analysis. (*Id.* at 6) (citing *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000)). In response, the Commissioner argues that "the ALJ properly noted that the form Dr. Alost had completed for Plaintiff in which he checked the box that she had a 'disability' such that she could obtain a disabled parking placard . . . was both conclusory and not supported by the evidence in the record [and that] this check-box form is not a 'medical opinion' . . . ." (ECF No. 22, p. 8).

Pursuant to *Newton v. Apfel*, the ALJ is "required to consider each of the [regulatory] factors before declining to give any weight to the opinions of the claimant's treating specialist."[2] 209 F.3d 448, 456 (5th Cir. 2000). However, "[t]he ALJ must consider the six factors in subsection (d) only with respect to the *medical opinions* of treating physicians." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (emphasis in original). The regulations explain that "some opinions by physicians are not medical opinions, and as such have no 'special significance' in the ALJ's

---

[2] The factors the ALJ must consider are: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Newton*, 209 F.3d at 456.

determination." *Id.* Further, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" *Id.*; *see also* 20 C.F.R. § 416.927(d)(1). The determination that an applicant is disabled or unable to work is a "legal conclusion[] that the regulation describes as 'reserved to the Commissioner.'" *Id.*

In *Frank v. Barnhart*, the Fifth Circuit held that unlike in *Newton*, the ALJ was not required to apply the six factors found in 20 C.F.R. 404.1527(d) to the doctor's opinion that the plaintiff "could not work [because t]he doctor's opinion was not a medical opinion within the meaning of the regulation." *Frank*, 326 F.3d at 620. In *Frank*, the treating physician noted that that plaintiff was "unable to work" because of her injuries. *Id.* Similarly, in this case, the ALJ was permitted to reject Dr. Alost's conclusion that Molina was permanently disabled (R. 959) because the *Commissioner* is "responsible for making the determination or decision about whether [Molina met] the statutory definition of disability." 20 C.F.R. § 416.927(d)(1). Dr. Alost's conclusion that Molina was disabled "intrudes upon an area reserved to the Commissioner, and the ALJ may reject such an opinion without reference to the factors used to evaluate a typical medical opinion." *Sanchez v. Astrue*, 265 F. App'x 359, 361 (5th Cir. 2008). Accordingly, the Court finds that the ALJ was not required to give any weight to Dr. Alost's conclusion that Molina had a permanent disability and that the ALJ was not required to consider the *Newton* factors in rejecting that opinion.

Next, Molina argues that "[t]he ALJ erred by substituting her medical conclusion when she interpreted Dr. Everett Campbell's treatment as evidence of no disability on the assumption that it would be 'imprudent' for the doctor to conduct knee surgery if he believed [Molina] was disabled and would therefore not improve her wellbeing." (ECF No. 20, p. 3). Molina appears to be contending that the ALJ improperly misinterpreted the opinion of her treating physician, Dr.

Campbell, with respect to the severity of Molina's medical conditions. *See* (*Id.* at 3, 7). In response, the Commissioner contends that "there is no error in the ALJ's consideration of Dr. Campbell's treatment plan for [Molina] to undergo surgery as an indication that she was not disabled and that her condition could improve with such a procedure." (ECF No. 22, p. 9). The Commissioner also argues that Molina "does not identify a particular opinion [of Dr. Campbell] at issue." (*Id.*).

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d at 455. Further, "[i]t is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)) (second alteration in original). In her Decision, the ALJ specifically addressed each of the medical treatment records from Dr. Campbell in formulating Molina's RFC and explained how those records factored into the RFC determination. (R. 185-86). Additionally, Molina does not specifically identify any medical opinions or treatment records from Dr. Campbell that the ALJ rejected in her Decision. Accordingly, based upon the discussion of Dr. Campbell's treatment records in the Decision, the Court finds that the ALJ did not improperly reject Dr. Campbell's conclusions and substitute her own medical conclusions. The Court further finds ALJ properly interpreted the medical records to determine Molina's capacity to work, as was her responsibility.[3] *See Fontenot*, 661 F. App'x at 277.

---

[3] Additionally, the ALJ's observation about the prudence of knee surgery is located in the discussion of Dr. Alost's conclusion that Molina was permanently disabled. (R. 186). As addressed above, it was proper for the ALJ to disregard Dr. Alost's legal conclusion as to Molina's ability to work.

7

Molina also argues that "[t]he ALJ erred by disregarding Plaintiff's testimony of multiple right knee surgeries and chronic pain [and] the record of medical evidence submitted." (ECF No. 20, p. 5). In her Brief, Molina discusses her medical treatment records beginning on June 26, 2018, and continuing through May 2, 2019.[4] (*Id.* at 3-4). Molina contends that "[t]he ALJ merely omitted the [medical records from June 2018 through May 2019,] when determining [her] ability to stand, walk, bend, lift, or carry." (*Id.* at 6).

Contrary to Molina's assertion, the ALJ did not omit or reject the medical records from June 26, 2018 through May 2, 2019, as Molina never submitted them to the ALJ. Instead, these records were only submitted to the Appeals Council *after* the ALJ's Decision. (R. 2). "When confronted with new and material evidence, the Appeals Council 'shall evaluate the entire record including the new and material evidence . . . . [and i]t will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016) (quoting 20 C.F.R. § 404.970(b)); *see* 20 C.F.R. § 416.1470(b). If the Appeals Council "conclude[s] that the additional information d[oes] not provide a basis for changing the ALJ's decision[, then] the ALJ's decision bec[o]me[s] that Commissioner's final decision." *Whitehead*, 820 F. 3d at 779. Finally, "the regulations do not require the Appeals Council to discuss the newly submitted evidence, nor is the Appeals Council required to give reasons for denying review." *Id.* at 780.

The medical records first submitted to the Appeals Council cover Molina's treatment both before and after the ALJ's Decision. For the records prior to the Decision,[5] the Appeals Council

---

[4] Molina cites to exhibit 9F for her treatment records on June 26, 2018. However, the quoted language does not appear in exhibit 9F and is instead found in the "Medical Evidence of Record (MER), dated 4/25/2018 to 11/14/2018, from UMC Fabens - Medical Records." (R. 136). The medical records in exhibit 9F are from July 27, 2017, through August 22, 2017. (R. 960-66).

[5] The Appeals Council identifies these records as being from April 25, 2018, through November 14, 2018. (R. 2).

8

determined that they "do[] not show a reasonable probability that [the records] would change the outcome of the decision." (R. 2); *see Whitehead*, 820 F.3d at 780 ("we conclude that the newly submitted evidence was not so significant as to require remand to the ALJ for additional consideration."). For the records after the date of the Decision,[6] the Appeals Council determined that they "do[] not relate to the period at issue. Therefore, [they] do[] not affect the decision about whether [Molina was] disabled beginning on or before December 17, 2018."[7] (R. 2). *See Carter v. Berryhill*, No. CV 16-11702, 2017 WL 3641614, at *16 (E.D. La. July 26, 2017), report and recommendation *adopted*, No. CV 16-11702, 2017 WL 3620800 (E.D. La. Aug. 23, 2017) ("The new evidence must thus relate to the time period on or before the date of the ALJ's hearing decision.").

The Court finds that the records submitted to the Appeals Council covering the period before the Decision date largely confirm the other medical evidence in the record. In *Whitehead*, the Fifth Circuit determined "that the newly submitted evidence was not so significant as to require remand to the ALJ for additional consideration." 820 F.3d at 780. Likewise, here, the Appeals Council determined that these records do "not show a reasonable probability that [they] would change the outcome of the decision."[8] (R. 2). The medical records considered by the ALJ and the medical records submitted to the Appeals Council reinforce Molina's knee issues and the limitations that were considered and factored in the ALJ's RFC determination. *See* (R. 136, 181-87, 960-66, 1319). For example, the June 26, 2018 medical records from Dr. Campbell reflect Molina's knee pain and the same movement restrictions found in the March 15, 2018 medical

---

[6] The Appeals Council identifies these records as being from January 3, 2019, through June 5, 2019. (R. 2).

[7] The Appeals Council then advised Molina that if she wanted them "to consider whether [she] was disabled after December 17, 2018, [she would] need to apply again." (R. 2).

[8] Molina does not argue that the Appeals Council's consideration of the new medical records was in any way erroneous.

records that were considered by the ALJ in her RFC determination. *See* (R. 136, 186, 1319). Further, the ALJ considered Molina's difficulties in walking more than a block in the RFC determination. (R. 183); *see* (R. 136). Overall, the ALJ's RFC determination expressly accounts for Molina's knee issue and "limit[s] [Molina] to a restricted range of sedentary residual functional capacity with the use of a cane for ambulation.". (R. 185). Finally, the ALJ discussed and considered Molina's knee issues throughout the Decision. *See, e.g.,* (R. 183) (Molina "can walk half a block."); (R. 184) (Molina "reported increased acute [knee] pain and no help with injections."); (R. 185).

As the medical records from April 25, 2018, through June 5, 2019, were not submitted to the ALJ, the Court finds that they could not have been considered in the Decision and thus were not improperly rejected by the ALJ. Further, the ALJ expressly considered the rest of the medical records identified in Molina's Brief and Molina's testimony about her knee issues, *see* (ECF No. 20, p. 3), when making the RFC determination. (R. 181-86). Accordingly, the Court finds that Molina's argument that the "ALJ erred in disregarding Molina's chronic knee pain, difficulty walking[,] and difficulty going up stairs" fails because there is substantial evidence that the medical records submitted to the ALJ were properly considered by the ALJ in the RFC determination and were not omitted by the ALJ.

## IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's decision denying benefits is **AFFIRMED**.

**SIGNED and ENTERED** this 7th day of August, 2020.

ANNE T. BERTON
**UNITED STATES MAGISTRATE JUDGE**